UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AKEIA R. PARKS,

                Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

**DECISION AND ORDER**

1:19-CV-00505 EAW

## INTRODUCTION

Represented by counsel, plaintiff Akeia R. Parks ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 5; Dkt. 9), and Plaintiff's reply (Dkt. 12). For the reasons discussed below, Plaintiff's motion (Dkt. 5) is granted in part, the Commissioner's motion (Dkt. 9) is denied, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## BACKGROUND

Plaintiff protectively filed her application for DIB on August 21, 2015. (Dkt. 4 at 71).[1] In her application, Plaintiff alleged disability beginning June 16, 2014, due to lower back pain, inability to tie shoes, inability to walk more than one block without pain, shooting pain in right leg and buttocks, and limited ability to sit and stand. (*Id.* at 71-72). Plaintiff's application was initially denied on January 26, 2016. (*Id.* at 85-96). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Paul Georger on February 9, 2018. (*Id.* at 25-70). On May 2, 2018, the ALJ issued an unfavorable decision. (*Id.* at 10-24). Plaintiff requested Appeals Council review; her request was denied on February 17, 2019, making the ALJ's determination the Commissioner's final decision. (*Id.* at 4-7). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.  Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## **DISCUSSION**

### I.     **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520.  Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through March 31, 2020.  (Dkt. 4 at 15).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since June 16, 2014, the alleged onset date.  (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairment of degenerative disc disease of the lumbar spine, with disc herniation and radiculopathy.  (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id.* at 16).  The ALJ particularly considered the criteria of Listing 1.04 in reaching his conclusion.  (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform "sedentary work" as defined in 20 C.F.R. § 404.1567(b) with the additional limitations that:

> [Plaintiff] can . . . carry[] ten pounds occasionally and less than ten [pounds] frequently; sit[] for six hours, stand[] for two hours, walk[] for two hours; push and pull as much as can lift and carry; and, [Plaintiff] can climb ramps and stairs occasionally; never climb ladders, ropes, or scaffolds, balance occasionally; stoop occasionally; kneel occasionally; crouch occasionally; and, crawl occasionally.  Further [Plaintiff] requires a sit/stand option with use of a cane to ambulate.

(*Id.*).  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  (*Id.* at 19-20).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, through the date last insured, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could have performed, including the representative occupations of telephone solicitor, charge account clerk, and surveillance system monitor. (*Id.* at 20-21). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 28).

## II.   Remand of this Matter for Further Proceedings is Necessary

Plaintiff asks the Court to reverse, or in the alternative, remand this matter to the Commissioner, arguing that: (1) the ALJ failed to properly evaluate Listing 1.04A at step three of the sequential analysis; and (2) the ALJ failed to properly evaluate Plaintiff's symptoms and credibility pursuant to Social Security Ruling ("SSR") 16-3p. (*See* Dkt. 5-1). For the reasons set forth below, the Court finds that the ALJ's failure to provide an explanation as to why Plaintiff's degenerative disc disease did not meet the requirements of Listing 1.04A is an error necessitating remand for further administrative proceedings.

### A.   Step Three Analysis

"Plaintiff has the burden of proof at step three to show that [his] impairments meet or medically equal a Listing." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009). "To match an impairment in the Listings, the claimant's impairment must meet all of the specified medical criteria of a listing." *Loescher v. Berryhill*, No. 16-CV-300-FPG, 2017 WL 1433338, at *3 (W.D.N.Y. Apr. 24, 2017) (internal quotation marks and citation omitted). "If a claimant's impairment manifests only some of those criteria, no matter how

- 6 -

severely, such impairment does not qualify." *Rockwood*, 614 F. Supp. 2d at 272 (internal quotations and citations omitted).

An ALJ is required to provide an explanation "as to why the claimant failed to meet or equal the Listings, '[w]here the claimant's symptoms as described by the medical evidence appear to match those described in the Listings.'" *Rockwood*, 614 F. Supp. 2d at 273 (quoting *Kuleszo v. Barnhart*, 232 F. Supp. 2d 44, 52 (W.D.N.Y. 2002)) (alteration in original). "[I]t is the ALJ's responsibility . . . to build an accurate and logical bridge from the evidence to [his or her] conclusion to enable a meaningful review," and "[t]he Court cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." *Loescher*, 2017 WL 1433338, at *3 (internal quotation marks and citations omitted) (second alteration in original). However, "[a]n ALJ's unexplained conclusion [at step three] of the analysis may be upheld where other portions of the decision and other 'clearly credible evidence' demonstrate that the conclusion is supported by substantial evidence." *Ryan v. Astrue*, 5 F. Supp. 3d 493, 507 (S.D.N.Y. 2014) (citation omitted).

At step two of the sequential analysis, the ALJ found that Plaintiff had the following severe impairment: degenerative disc disease of the lumbar spine, with disc herniation and radiculopathy. (Dkt. 4 at 15). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a Listing, stating:

> [Plaintiff's] back impairment does not meet listing 1.04, disorders of the spine. The medical record does not demonstrate compromise of a nerve root (including the cauda equina) or the spinal cord with additional findings of evidence of nerve root compression characterized by neuro-anatomic

> distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss.

(*Id.* at 16).

Plaintiff cites evidence in the record and argues that because Listing 1.04A's "criteria appeared to have been met, the ALJ was required to explain why he felt the listing criteria had nevertheless not been satisfied." (Dkt. 5-1 at 23). The Court agrees. Listing 1.04A, in relevant part, requires that a claimant demonstrate:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). . . .

*Ryan v. Astrue*, 5 F. Supp. 3d 493, 507 (S.D.N.Y. 2014) (quoting 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04A).

### 1. <u>Nerve Root Compression With Pain</u>

The first requirement, nerve root compression with pain, may be satisfied with a diagnosis of radiculopathy. *See Norman v. Astrue*, 912 F. Supp. 2d 33, 78 (S.D.N.Y. 2012) (noting that lumbar radiculopathy evidenced nerve root compression); *Blais v. Astrue*, No. 08-CV-01223 (DNH), 2010 WL 2400177, at *4 (N.D.N.Y. May 13, 2010) (noting that findings of radiculopathy suggest nerve root compression). Plaintiff's doctors consistently observed radiculopathy. (*See* Dkt. 4 at 248 (at February 2015 appointment, Dr. Edward D. Simmons reviewed Plaintiff's lumbar spine MRI and noted Plaintiff's bilateral lower extremity radiculopathy), 267 (at October 2015 appointment, Dr. Andrew C. Matelliano noted that electrodiagnostic studies of Plaintiff's bilateral low extremities show right L5-S1 radiculopathy), 398 (at November 2016 physical examination, Dr. Michael D. Calabrese

diagnosed Plaintiff with lumbosacral radiculitis/radiculopathy)). These observations were also consistent with Plaintiff's complaints of chronic and persistent pain that radiated from her lower back into her right leg. (*See id.* at 247, 250, 300, 361, 396, 410). As such, there is evidence in the record from which the ALJ could have concluded that Plaintiff had nerve root compression with pain for at least 12 consecutive months.[2]

### 2. Limitation of Motion of the Spine

Plaintiff's treatment records also contained evidence from which the ALJ could have concluded that Plaintiff's spine had limited motion for the period necessary. (*See* Dkt. 4 at 235 (at June 2014 examination, Dr. Akshata Desai observed abnormal and painful decreased range of motion and flexion of spine and limited range of motion in lumbosacral spine), 238 (at May 2014 examination, Dr. Neal Shah observed abnormal musculoskeletal range of motion and limited range of motion in lumbosacral spine), 241 (at April 2014 examination, Dr. Deepika Narasimha observed abnormal musculoskeletal range of motion and limited range of motion in lumbosacral spine), 248 (at February 2015 examination, Dr. Simmons observed restricted range of motion in lumbar spine, noting 30% flexion and extension and 20% right and left lateral bending), 381 (at November 2017 examination, Dr. Bernard Beaupin noted that lumbar spine range of motion was limited by 50%), 408 (at October 2016 examination, Dr. Calabrese observed limited range of motion in

---

[2] The Commissioner summarily argues that Plaintiff cannot show that she meets the criteria of Listing 1.04A "at the same time and for 12 consecutive months." (Dkt. 9-1 at 7). However, as outlined in this Decision, there is medical evidence from which the ALJ could have concluded that Plaintiff satisfied the Listing criteria for the requisite 12-month period. As such, remand is proper so that the ALJ may provide a more fulsome explanation as to why Plaintiff's impairments did not meet the criteria of Listing 1.04A.

lumbosacral spine), 439-43 (Medical Care of Western New York at Buffalo's October 2016 physical therapy records noted limited range of motion in lumbar spine), 448 (at September 2017 examination, Dr. Cameron Huckell observed restricted range of motion in lumbar spine, noting 30% flexion, 10% extension and right and left lateral bending)).

### 3. Motor Loss with Sensory Loss

The Commissioner's regulations provide that motor loss may be shown by an "inability to walk on the heels or toes, to squat, or to arise from a squatting position." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(E)(1); *see also Olechna v. Astrue*, No. 08-CV-398, 2010 WL 786256, at *6 (N.D.N.Y. Mar. 3, 2010) ("Plaintiff's muscle weakness was also documented in his ability or difficulty with heel and toe walking."). Here, the record contains medical evidence supporting a finding that Plaintiff had loss of motor function. (*See* Dkt. 4 at 232 (at May 2014 appointment, physical therapist Stacey J. Lenhard noted that Plaintiff experienced increased pain when transferring from sit to stand), 251 (at March 2015 examination, Dr. Simmons observed Plaintiff's difficulty standing up on her toes on the right side and getting up from seated position), 448 (at September 2017 examination, Dr. Huckell noted that Plaintiff was "unable to stand on heels and toes showing balance and coordination" and had difficulty "going from a seated to standing position")). By contrast, consultative examiner Dr. Donna Miller noted that Plaintiff could walk on heels and toes without difficulty. (*See id.* at 329). The ALJ did not address these findings or attempt to explain why the medical evidence did not show motor loss for the period necessary.

The medical evidence also contains findings consistent with sensory loss. (*See id.* at 255 (at July 2015 examination, Dr. Matelliano noted right sided L5 sensory loss), 257 (at August 2015 examination, Dr. Matelliano noted that sensation down right leg is intermittent and right L5 sensory loss), 259 (at September 2015 examination, Dr. Matelliano noted intermittent numbness and tingling in Plaintiff's right leg and right L5 sensory loss), 361 (at January 2016 examination, Dr. Matelliano observed right sided L5 sensory loss and sensory deficit in right L5 distribution)).

### 4. Positive Straight Leg Raising Test

The Court also finds that there is medical evidence in the record from which the ALJ could have concluded that Plaintiff satisfied the final requirement, positive straight leg raising test, for the period necessary. Plaintiff's treatment records consistently documented positive straight leg raising tests. (*See* Dkt. 4 at 248, 255, 259, 261, 330, 356, 381, 369, 371, 371, 373, 375, 398, 404, 411, 416, 422, 428, 432, 436, 448). Significantly, the record contains no negative straight leg raising tests.

The Commissioner contends that because only two tests were specifically identified as either supine or seated (Dkt. 4 at 248, 448), Plaintiff has failed to show positive straight leg raising tests "both seated and supine, occurring at the same time." (Dkt. 9-1 at 6). Here, considering the record only contained consistently positive straight leg raising tests, the mere fact that Plaintiff's physicians did not specify whether the tests were seated or supine is insufficient information to conclude that the requirements of Listing 1.04A were not met. Moreover, even if Plaintiff's impairment did not meet the specific criteria of Listing 1.04A, it still may medically equal the Listing. *See* 20 C.F.R. § 404.1526(a). In particular,

Plaintiff's impairment may medically equal a Listing if Plaintiff has other findings that are related to her impairment that are equal in medical severity. *Id.* § 404.1526(b)(1). In determining whether an impairment medically equals a listing, an ALJ must consider all evidence in the record concerning the impairment and its effects on the claimant. *Id.* § 404.1526(c). Although doctors did not consistently identify whether the straight leg raising tests were supine, seated, or both, the record contained a total of 21 positive straight leg raising tests and no negative straight leg raising tests. Under these circumstances, the ALJ should have investigated further or, at the very least, explained his basis for concluding that Plaintiff's impairment did not medically equal the Listing. The ALJ's failure to provide such an explanation precludes meaningful review by this Court and warrants remand.

"Plaintiff has made at least a colorable case that [she] meets [or equals] the requirements of Listing 1.04(A) and thus, the ambiguities noted above are critical to a finding of disability." *Monsoori v. Commissioner*, No. 1:17-cv-01161-MAT, 2019 WL 2361486, at *6 (W.D.N.Y. June 4, 2019). Accordingly, remand for further administrative proceedings is required. On remand, the ALJ must specifically explain his finding as to whether Plaintiff meets or equals the criteria specified in Listing 1.04A. *See Nashir v. Berryhill*, No. 18-CV-767-HKS, 2020 WL 1445069, at *5 (W.D.N.Y. Mar. 25, 2020) ("Plaintiff is clearly owed a more substantive explanation of why he did not meet the Listing 1.04A. If, on remand, Plaintiff is once again found not disabled at step three, the ALJ must provide an explanation of what criteria from Listing 1.04A Plaintiff failed to meet in consideration of all of the evidence regarding his severe impairments of the cervical

spine.  Specifically, the ALJ is directed to address all conflicting evidence and provide reasons for discounting that evidence which he rejects."); *Cherico v. Colvin*, No. 12 Civ. 5734(MHD), 2014 WL 3939036, at *28 (S.D.N.Y. Aug. 7, 2014) (where there was record support for each symptom under Listing 1.04A, the ALJ's failure to address that evidence was error justifying remand); *Torres v. Colvin*, No. 14-CV-479S, 2015 WL 4604000, at *4 (W.D.N.Y. July 30, 2014) (remanding where "the record evidence suggests that Plaintiff's symptoms could meet the Listing requirements in 1.04(A)" because the court could not "determine whether the ALJ properly considered the Listing because his only reference to it is a recitation of the standard").

## B.     Plaintiff's Remaining Argument

As set forth above, Plaintiff has identified an additional reason why she contends the ALJ's decision was not supported by substantial evidence.  However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach this issue.  *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *report and recommendation adopted*, 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 5) is granted to the extent that the matter is remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings (Dkt. 9) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated:     June 30, 2020
           Rochester, New York